Ms. Metcalf, whenever you're ready. Thank you, Your Honor. May it please the Court, good morning. My name is Hannah Rogers Metcalf. I have the privilege to appear before this Court today on behalf of the appellant, Mr. Eddie Lane. Also in the courtroom today with me are Mr. Lane's other counsels, Record, Alison Sullivan, and Clark Newton. The District Court erred when it guessed that the South Carolina statute proposed for improvements to real property applied to bar Mr. Lane's product liability claims for injuries he sustained while cleaning a stand-alone finished coating machine, which was a piece of industrial equipment. That is the issue before the Court today. We are asking this Court to certify this question to the South Carolina Supreme Court or to reverse the District Court's decision. We are asking the Court to certify this question or reverse the Court for the following reasons. First, there is no South Carolina precedent for the District Court's decision to apply a construction statute of repose for improvements to real property to a piece of industrial equipment. The District Court acknowledged this fact in its decision. The District Court included a lengthy footnote going through the paucity of South Carolina decisions relating to, in general, the construction statute of repose and specifically the application of the statute of repose with regard to improvements for real property to industrial equipment. Counsel, can I ask you a question? It's almost like you and your colleagues on the other side have sort of a definitional dispute about what this case is about and kind of what the question in front of us is. You say there is no controlling authority, but there is a controlling standard established by the South Carolina Supreme Court in the pipeline case. Right in that case, the Supreme Court says, look, we're giving you these factors and it's going to be a case-by-case determination. That's where we are. You've got a general standard and you go off and apply it to the facts. Well, you know, that's a standard and that's what courts do all the time. They apply a general standard to a particular set of facts. At least that's how your colleagues kind of see this case. Why would we certify that? It's not that hard. Just apply it to the facts. But you're suggesting that, no, no, no, this is like there's an open legal question here about a category of cases that the standard might not apply to. How do I know whether this is sort of a legal question about a category or just standard court stuff? Apply a general standard to the facts in front of you. That's a great question, and I think there's a two-part answer. First, with regard to whether it's a legal question. What the district court judge in this case and the prior district court decision that conflicted with this said is it's not clear. The South Carolina Supreme Court, they hinted at this. The South Carolina Supreme Court has never addressed this question of whether a piece of equipment, industrial equipment, and Judge Wooten mentions this in the Irvin decision, is covered by the statute of repose. The South Carolina pipeline case does talk about a case-by-case analysis, and we would contend as an additional basis for reversing the district court decision that the facts in this case don't meet. When you look at the facts on a case-by-case determination, the facts here do not meet the necessary requirements for permanence. We would contend that this case more squarely falls within the decision in Irvin, which said where you had this piece of equipment that is bolted in to make it work, to make the equipment run properly, but it's not incorporated into the structure of the building, it is not an improvement to real property. The facts here don't support on a case-by-case analysis if the court were to do that, the district court's decision. The bigger issue is there's very little case law in South Carolina interpreting this statute at all. Actually, most of it was because it was certified questions from the district court with regard to the application of the statute of repose for real property, and there are none addressing the issue of whether or not it applies to industrial equipment. I think I understand that argument. I think Judge Harris's question is the right one. Your argument, effectively, is that there's an exception to the standard the Supreme Court laid out. Help me understand how you could draw that exception out of the statute. They're just interpreting a statute. They say improvement to real property, this is what it means. When I read the statute, I don't see anything that would permit me to reasonably believe that there's a carve-out for industrial equipment, or whatever carve-out you want to design. That's a little bit of the trouble I'm having. Where would I look in the statute to find some hook for a reasonable court to determine that, yes, this applies to all improvements to real property unless it's an industrial machine? Sure, Your Honor. The statute itself, the plain language of the statute says it applies to improvements to real property, and it's keyed off of substantial completion with issuance of certificates of occupancy. It doesn't limit it to certificates of occupancy, right? It just says improvements to real property. We now know what improvements to real property mean. At least we know the test for it. We're only asking the question of, is this an improvement to real property? We have a test. What I'm looking at is, where would I look in the statute to find an exception that it's not an improvement to property if it meets these three things, but it's a piece of equipment? I think you have to look at the legislative history and the intent of the legislation. In the preamble, which is referenced by the Supreme Court as prior decisions, the legislature talks about that this statute is deviating from the common law and creating a substantive statute of repose for individuals in the construction industry. But that's not what the South Carolina Supreme Court case was about. The pipeline case wasn't about suing someone in the construction industry, right? They sued a pipe manufacturer for a faulty pipe. We have to follow the guidance they've given us, even if we, approaching a South Carolina statute, if we were starting from square one, we might think differently, but that's not our role. Taking what South Carolina Supreme Court has done, applying it to a product manufacturer, where do we find in the statute this exception that Judge Richardson is asking about? In the pipeline case, what the South Carolina Supreme Court is looking at is, they talk about there's an easement and that this pipeline is in the soil and it is a component of construction in the soil. And the statute is, you have to look at the statute with plain language and the common sense meaning of what an improvement to real property is. And in the pipeline case, the pipeline is underground, permanent, and intended to be there forever, as long as it doesn't blow up, is what the Supreme Court says. And in this case, the difference is, if you're going by this case by case analysis... Yeah, I mean, I get that it's a different case, right? But it seems to undercut your argument about this is statute only applies to construction and the construction industry and certificates of occupancy, right? Like, that wasn't the case there, so that can't be right in this case. So what's, you know, we have to find... Sorry, Your Honor. The South Carolina Supreme Court has repeatedly referred to this as the construction statute of repose. Justice Kittredge, in the Columbia health care decision, refers to this as the construction statute of repose. In the Snavely decision, they talk about manufacturers of components in construction. The Broom decision, which was the original Supreme Court decision that struck down the first version of the statute of repose, talks about it in the context of construction and manufacturers of components in the construction industry. The Ocean Winds decision talks about it in terms of construction components and windows. Under your reading of the statute, there's an exception for industrial machines. Are there any machines that could be an improvement to real property? I mean, is there anything, I mean, if you had a grain elevator, right? I mean, is there anything, or is your view, it's an absolute rule that it cannot be an improvement to real property if it runs on electricity? I mean, I'm not sure what your test is, but is there any machine that could be an improvement to real property? Yes, Your Honor, I think so. Like what? Like what might be an improvement to real property if it's a machine? Under your test, right? You're going to test my knowledge of machines here. Fair enough. That's why I went to law school and didn't become an engineer. But I think Irvin, Judge Wooten outlines, does a very thorough analysis of the various cases, and one of the things that Judge Wooten says in that decision is where the machine is incorporated into the structure of the building. So it's not just, you know, annexed to it. So I use the example of a washing machine in a laundromat. It may be bolted down. It may be hardwired in, but it may be, it's removable. If that laundromat becomes an Apple store or a florist, it's removable. The difference would be if something is put in to be incorporated into the structure permanently. In this case. So why isn't that captured? So I totally get that, right? That makes sense to me. But that seems to be what permanence is getting at in the Supreme Court's test, right? And so that would suggest to me that machine or no machine doesn't really matter, right? We really are fundamentally doing the analysis of is it permanent, right? And not permanent maybe in the way you and I would use that phrase, but permanent in the way the Supreme Court uses that phrase, which is to say it has a lengthy, useful life, right? And so, you know, we can debate about that factor, but that seems like to me that means we're talking about the three factors, whether it's a machine or not a machine. There's not a machine exception to the test the Supreme Court laid out in Lone Star Steel. And let me be clear. I don't know that what we're articulating is that we're asking the Supreme Court to articulate or asking the court to certify for an exception. But what we're arguing is the district court's decision in here is a radical departure because it says that it is now applying to a piece of production machinery. There's 50 years of jurisprudence in South Carolina with products liability since the statute was first enacted in its various forms where people have brought products liability claims relating to workplace injuries on equipment. To suddenly depart from that, in this case, with a piece of stand-alone machinery that is not incorporated into the structure of the building would fundamentally turn products liability law on its head and also have massive implications with regard to workers' compensation, subordination. Can I ask you about that question about incorporated into the property? Assuming, let's think about the three-part test. Did you concede or did your client concede the first part of the test in the district court that it enhances the value of real property? Because the court said that the dispute is just about permanence. I think we conceded that it was valuable. I guess I'm getting a little... If you agree that this machine enhances the value of real property, so not just that it's a useful machine and it's expensive, but that it enhances the value of the real property itself, isn't that to acknowledge that it is integrated, it is a component of the real property now? It's not like a washing machine like you're saying, right? Where you can unplug it and take it away. If you're saying this enhanced the value of the real property, this is now increasing the value of the building or of the land. That seems to be connected to the question we're talking about here of whether it's permanent enough that it's become a fixture. To answer your question, I think that what Mr. Lane conceded was that it was valuable. Not that it is increasing the value of the real property. That's the question though, isn't it? The Supreme Court said it enhances the value of the real property. If that's not being contested, I'm not trying to say you've conceded the third part of the test because you conceded the first. I just think they might be related. Just to help follow up, this is the district court's finding, like the parties in Murray, do not dispute that the shuttle coder increased the value of CSI's property. Yes, we conceded that it increased the value of CSI's property. CSI is the company. They own the shuttle coder. I don't know. It's not in the record with regard to whether or not this was considered separate property. It was appreciated separately. That's not in the record before this court. What they didn't concede is the permanence. What we've argued consistently is this was not incorporated in, affixed to, and made a permanent part of that building. Sure. You definitely didn't concede permanence. Some of the arguments in your brief seem to be about was it integral, which is what some states require. South Carolina hasn't put it that way. I'm wondering if the question of how integral it is is somewhat a prong one and a prong three question because prong one is about increasing the value of the real property, not just increasing your overall net worth. Right. Right. What the district court said is that they conceded that it increased the value of CSI's property. Counsel, can I ask you just while you have a second left to switch gears to successor liability for a second? In light of the new evidence that was put in, is there a factual dispute that you can point me to as to whether this president, is it Roehrig?  Roehrig, controlled the board of World Genesis II in some way that would give him power over kind of high-level corporate decision-making? Yes, there is a factual dispute. Roehrig testified that there was no board that he controlled. I thought that was no board as to the GenCo didn't have a board. You think there's a factual dispute as to whether World Genesis II has a board? Yes, Roehrig testified that he wasn't aware of any of these individuals that were supposedly on the board and he was never aware of a reported to a board with Genesis II. He said he reported to one individual, but that he continued to control all of the operations of New GenCo. The day-to-day operations. If the board of World Genesis II wanted to sell New GenCo, do you think there's a factual dispute as to whether Roehrig could stop them? I think there is a factual dispute. There's significant conflicting testimony between Stasek and Roehrig in the record with regard to the control and the sale of New GenCo. Perhaps I'm not understanding your question with regard to which board, so I don't want to misspeak. I'm just trying to figure out. It seemed to me that there is a factual dispute about who was in charge of day-to-day operations at this facility. It did not seem to me that there was a factual dispute in light of the new evidence as to who was in charge of the World Genesis II Corporation. But if you think there is, if you think Roehrig is pulling the strings over there, I will find a dispute as to that. That's your position, that actually Roehrig actually controls New Genesis II. World Genesis II, I'm sorry. Okay, and I guess that's where I was confused. I'm over time, so I don't want to take too much time in answering your question, but we don't think there's any dispute that Roehrig controlled New GenCo. With regard to Genesis II, the holding company, the record is not clear with regard to who controls. There's conflicting testimony about whether there was a board, whether there wasn't a board, who was on the board, and the record isn't clear from the bankruptcy filings as to who the shareholders are. So there is a genuine issue of material fact with regard to control of the successor company. Good morning, and may it please the Court. The District Court correctly ruled that the statute of repose in Section 153640 of the South Carolina Code bars Mr. Lane's claims in this lawsuit. The three-part test that the Supreme Court of South Carolina established in Lone Star controls whether an item is an improvement to real property under the statute. Applying that test, it's no surprise that the District Court found that the 11 1⁄2 ton coder located in the coder room in the coder facility is an improvement to real property. The District Court properly granted summary judgment on that basis. While the District Court correctly concluded that the statute of repose is dispositive in this case, three additional grounds also support affirmance. We've outlined those additional grounds in our brief, and I will discuss those further here today if time permits. Actually, you know what, just because we just are coming from a discussion of successful liability, let me give you a chance to respond to your colleague on the other side. Do you agree that there is a question of fact in this record as to whether or not Roehrig actually controls the holding company here? Absolutely not, Your Honor. We deposed Clemens and Stasek, who were the CEOs of the predecessor and successor companies. There is no dispute from that testimony, which is at JA 521 through 522 and 531 through 532, that Mr. Roehrig was the president, but all he had was day-to-day operational control. He had no strategic control over either company, and under Eagle, Window, and Door, that's simply not enough to trigger successor liability. Okay, thanks. Your Honor, I want to go back to the statute of repose. So, as I've mentioned, Lone Star dictates what qualifies as an improvement to real property under the statute. You have to have value to real estate, investment of labor and money, and it has to be permanent. So, that applies regardless of the property at issue, regardless of whether the item's a gas pipeline, bleachers, windows, or a piece of industrial equipment. The statute simply doesn't have a carve-out for anything, including industrial equipment. Here, like in most statute of repose cases, we're focused on permanency. And I think it's important to go to footnote 3 from the Lone Star case, where the Supreme Court said, permanence is necessarily a relative term when applied to improvement, since no improvement, whether the Tower of Pisa or the Pyramids of Giza, is truly permanent. They just have lengthy, useful lives. That's what the Supreme Court meant by permanent. So, here, as the District Court found, there is no doubt that the coder has a lengthy, useful life. It weighs 11.5 tons, it's bolted to the floor, it's hardwired into the building, and it's connected to the building's main water supply. The coder was placed in its own room in the coder facility. It remains there today, more than 20 years later. So, I want to speak just briefly to this modification issue. So, in the reply brief, Mr. Lane tries to sidestep permanency by arguing that the coder was moved and altered. That simply isn't true, but it's also misplaced for at least two reasons. First, an alteration in no way negates the coder's permanency under Lone Star. As I just mentioned, permanency is not some rigid test, and the word shouldn't be interpreted in its literal sense. It can be movable or even moved and still have a lengthy, useful life. Second, the evidence shows that the modification or refurbishment in 2021, which was after Mr. Lane's accident, was to the coder's top side head, which is basically the opposite side from where Mr. Lane was injured. Importantly, it just involved lifting a portion of the coder, about six inches, not the entire machine, just one of the rolls on the frame. I know that's hard to visualize without a photo, but it wasn't a move or an alteration. The coder stayed in the same room. The parts for that modification or refurbishment were actually shipped to the CSI facility and the work was performed on site. Can I ask you two record-ish questions? One, Judge Rushing suggested that the plaintiffs perhaps conceded below that the coder increased the value of their property. Is that your understanding? The district court said it, but was that your understanding based on the arguments the plaintiffs made below? Yes, Your Honor. All parties agreed that the only dispute was over permanency. Second question, perhaps. When I looked at Lone Star Steel, and I just want to give you a chance to respond to this, one of the things that struck me as a little bit unusual, and maybe it didn't make it into their final test, but when it starts describing what an improvement is, it includes this citation to Dunham v. Davis, which is citing the corpus, and it creates a carve-out for trade fixtures which can be removed without injury to the building. That didn't show up in the three-part test, but I wondered if you had thoughts about whether these are trade fixtures, whether they should be considered trade fixtures, and whether that is an exception that has somehow survived Lone Star. Right, Your Honor. So, I think that when the Supreme Court was formulating the three-part test, it went through several definitions and sort of looked at what other states have looked at in similar statutes, and some states do follow this fixture analysis. The Supreme Court, or South Carolina, does not, and the Lone Star test did not incorporate that fixture analysis, which is what I think you're referring to. Do we know from the record, based on the sale or bankruptcy proceeding or the like, whether the facility here where the coder was found, was it owned by GenCoder, one of its various entities? As far as we know, the facility itself was owned by CSI at all pertinent times. At least up until Mr. Lane's accident. I just want to touch briefly on the carve-out issue for industrial equipment, just to make sure, as I think Your Honor has mentioned, several of the cases in South Carolina actually involved claims against a product manufacturer. Broom is one example. That was a garage door. Ocean Winds was windows. Lawrence was insulated panels, and Florence County, which is a South Carolina Court of Appeals case, actually involved bleachers. So, to hold otherwise, at least manufacturers would read an exclusion into the plain language of the other Court of Appeals and Supreme Court opinions that have addressed this issue and applied the test to the statute. Is my recollection correct that there are some states that do include such carve-outs? Yes. Statutorily include the carve-outs? Right. One of those would be Washington, for example. One of the cases that Mr. Lane cited was a Washington case and that statute does have such a carve-out. Based on your recollection, how does it carve it out? Does it carve out all industrial machines? What does the carve-out look like, if you recall? If you don't, don't worry about it. I believe the statute expressly says that this statute applies to these categories of person. Importantly, though, the South Carolina Supreme Court said that such a carve-out would be unconstitutional on equal protection grounds in the Broom case. The South Carolina may have had such a carve-out for manufacturers, not for industrial equipment, at some point, but the South Carolina Supreme Court said, no, you can't do that. I also just want to point to this court's decision in Lewis v. Weldotron. That was a case involving the Maryland statute of repose. We cite that in our briefs, but that was a case involving a similar statute of repose. It's an example of a case involving a piece of industrial equipment, and this court held that the statute of repose barred claims against the product manufacturer. I do think that case is instructive, in addition to the South Carolina cases. Mr. Lane asked for certification to the South Carolina Supreme Court. That would be improper here for at least two reasons. First, Rule 244, which is South Carolina's certification rule, says that certification is proper only when there's no controlling precedent from the South Carolina Supreme Court. Here, we have a test. We have controlling precedent from the South Carolina Supreme Court. The court has already spoken to this issue. There's nothing more for the court to say. Second, the rule requires that the certified question be determinative of the cause, then pending. As we've explained, there are additional grounds on which this court could affirm the district court, even if this court were to disagree with us on the statute of repose issue. For that reason, the certified question just wouldn't be determinative. Does it say that it necessarily has to be determinative? I don't have it in front of me, but I thought the South Carolina statute gave us at least a little bit of wiggle room, like it might be determinative. The rule does read as an and, Your Honor. So, it is a novel question, or a question to which there's no controlling precedent from the highest court of the state, and one that is determinative of the cause, then pending in the certifying court. Simply put, because of the alternate issues, we believe it would just be an exercise in futility, even if the rule did allow it, which it doesn't. The fact that there are alternative things that would be determinative, this would also be determinative. Imagine you had three different things, all three of which would resolve the case, hypothetically. It seems like the first one, the statute of repose, would be determinative. They found that it applied. It would determine the outcome in this case, right? The fact that there are alternative grounds that may or may not apply doesn't seem to eliminate our ability to apply Rule 244, would it? Even if this court were to certify and the South Carolina court agreed to answer the certified question, regardless, it would then come back to this court, and depending on the answer, this court would be confronted with the three alternate issues, which are all independent bases for this court affirming summary judgment. The rule doesn't say that it may be determinative. I thought that the rule contemplated exactly this situation and allowed us to certify if it may be determinative, but I, for whatever reason, cannot find the statutory language or rule language in front of me. It says may be determinative, but it's an and test. I understand that it's an and test, but the and is that may be determinative, not that it is determinative or will be determinative. I may be putting too much weight on that word may, but I thought that that was contemplating exactly this kind of situation. I would just resort back to the first part of the test, which is it does need to be a question of law to which the Supreme Court of South Carolina has not spoken and there's no controlling precedent. This goes back to sort of my original question. It's almost metaphysical about how you want to define the question here, but if you believe if you think it is fair to characterize this question as whether this that whether and under what circumstances the statute of might apply to heavy industrial equipment and on that we have no guidance. Correct. Correct, Your Honor. And if the question is to whom the statute applies, we know that the Supreme Court isn't going to make a carve out based on what it's already told us in Broome. I want to turn to the design defect issue, which is our first alternate ground. So, Mr. Lane's claims are based on an alleged design defect. Those claims fail because adequate warnings render the coder not defective. Under South Carolina law, a product is not in a defective condition and reasonably dangerous to the user under section 157310 of the South Carolina Code if the product contains adequate warnings. This court's 2018 decision in Hickerson is directly on point. In Hickerson, the court held that comment J of section 402A of the restatement second of torts, which has been adopted by South Carolina law, shields a manufacturer from liability for product defects if the product contains adequate warning. Essentially, the warning cures any alleged design defect. So even if there were a defect, an adequate warning would cure that defect. The court also explained that under South Carolina law, a manufacturer is entitled to assume that its warnings will be read and heeded. Here we have Mr. Lane testifying that at the time of his accident, he was aware of the warnings, he understood what they meant, he understood the consequences of not following them, and he did exactly that. That consequence is exactly what he experienced here. So we outline that testimony at pages 9 and 10 of our response brief. You can also find it at JA 318-319, 322-23, and 326-29. In the next slide, I'm going to create an issue of material fact on the adequacy of the warnings by referring to ANSI standards. Just briefly, Mr. Lane's human factors expert, Dr. Hartman, testified that she had no opinion on the content of the warnings. We moved to exclude her opinions on that ground, but the district court did not reach that issue. But more importantly, as I just mentioned, Mr. Lane testified that he saw the coder in that manner, even though he knew of the risk. So under these circumstances, the proof's in the pudding. The machine's warnings were adequate, and in the absence of any evidence from Mr. Lane on inadequacy, Hickerson controls. The second alternate ground is product misuse, and that's codified at 1573-20 in South Carolina. So that statute just says that when the user of an allegedly defective product discovers the defect and is aware of the danger, but proceeds unreasonably to make use of the product and is injured by it, he's barred from recovery. So as we've discussed, Mr. Lane voluntarily encountered the risk, understood the consequences of his actions. Mr. Lane tries to overcome this in his reply brief by arguing that he used the coder in a manner that was foreseeable to New Gen Coat, but the plain language of the statute does not look at New Gen Coat's conduct. Mr. Lane's conduct is the only relevant conduct in that misuse analysis. Finally, as to the third alternate ground, successor liability, we've touched on this briefly, but Eagle Window and Door makes clear. For successor liability under the mere continuation theory, you have to have all three, officers, directors, and shareholders. It isn't an or test like you see in some states. In South Carolina, you've got to have all three. We don't have at least two here, and there's no dispute of fact over that. So just like in Eagle Window and Door, there's no commonality of shareholders or directors. You've got a publicly traded company on the New York Stock Exchange on one hand, you've got a private company on the other. My understanding was that they're trying to, your colleague on the other side wants to kind of come in on sort of an exception to the exception. You're already in an exception for the continuity. And they want to come in on this sort of caveat that like, well, even if the ownership is sort of in mean changed hands, if control over the corporation hasn't really changed hands, then we might find an exception. And I think that's where they are on the argument that the president hasn't changed. The president of the actual subsidiary hasn't changed, and he continues to run day-to-day operations just like he always did. Yes, so this comment comes from a note at the very end of the Eagle Window and Door opinion that there may be instances where officers or directors kind of lack ownership, but they still exert enough control and influence over both companies, the predecessor and the successor, to establish successor liability. The court was clear when it said that though, that it was referring to instances, and I'll quote, where the changing of corporate hats is tainted by fraudulent intent. That simply just isn't the case here. As I've mentioned, we've got testimony on pages 521, 522, 531, and 532 of the JA that makes clear that Alan Warrick, who was the president of both companies, that's not disputed, oversaw the company's day-to-day operations, but he had no strategic control over the company. He would have no say in the sale of the company. He had no say in the bankruptcy of the predecessor company. Indeed, in footnote 11, I believe, of the Eagle Window and Door decision, the court specifically said that it's not referring to instances where both companies have a common officer, but that person is merely along for the ride rather than the driver. That's exactly what happened here, and that's why that ownership exception, if there is one, doesn't apply. In conclusion, the district court properly applied the three-part test under Lone Star when it ruled that the statute bars Mr. Lane's claims. Nugent could respectfully request that the court affirm on that basis. Certification is not necessary. Alternatively, Nugent could request that the court affirm on any of the three grounds that we've raised in our brief. Thank you. Thank you. Ms. Metcalf, you have rebuttal time. Thank you, Your Honor. I would like to turn back to Judge Rushing's question, if I may, with regard to increasing the value. I wasn't trying to be cagey, but I didn't want to misstate the record. The district court correctly states that the parties agree that the shuttle coder increases the value of property to CSI. That is not a concession that this becomes part of the real property, and that the real property is therefore, the value of the real property is somehow improved. Can you tell us where in the record we can find that you argued that it did not increase the value of the real property? I mean, one's a concession, one's a you did not argue it, but I take her point to be saying, you just didn't argue that that factor, which is the real property factor, cut in your favor. Can you tell me where in the record you argued that? It's not argued, Your Honor. That is not... There's a difference between Right. It's not addressed by any parties with regard to whether or not it's increasing the value of the real property. The district court correctly states what Mr. Lane said, was it increases the value of the property to CSI to the manufacturer where Mr. Lane was injured. Interestingly, the record actually doesn't state whether or not CSI owns the building, whether or not how they treat this equipment, if it's depreciated as part of... Is it included as part of real property? Is there a UCC filing for it as a separate item? That's not in the record. But Lane does agree... Would those matter? I mean, imagine for tax... The state or federal tax law requires them to treat it one way or the other, or the UCC for certain obligations require them to treat it one way or the other. Would that matter? I think it could, Your Honor. How? Well, if a manufacturer Boeing or BMW in South Carolina has a plant and they have a piece of equipment or a printing press or whatever it is, and they treat it as separate personal property, industrial equipment, not part of a real property, I think there's a strong argument then that the manufacturer does not consider this to be an improvement to real property. They are claiming it as separate for depreciation purposes or for tax purposes. But does... I mean, so where would I fit that in the Supreme Court's test, right? Because at no point... The Supreme Court's test doesn't say, do they think it's personal property or real property? Do they think that federal tax law requires them to treat it some different way? Or state tax law requires them to treat it some different way? So, like, why would... How would that fit into the test? Assume for a minute that I think the Supreme Court's test is the test and there's not an exception? I think it would fall under the permanence analysis, Your Honor. If the manufacturer itself in its federal or state tax filings does not treat that piece of industrial equipment as a part of the real property, it goes to whether or not it is permanent. They have filings with the government saying, this is not permanent. It is movable. I can sell it. I can borrow against this piece of equipment. It can be recovered in a claim and delivery action. It is separate from this real property. And that's an important factor of permanence. And I think it goes to counsel's point earlier where she contended that the South Carolina Pipeline Lone Star case says that even things that are movable can be treated as permanent. There's nothing in the plain language of the statute that says that the South Carolina legislature contemplated that the construction statute of repose would apply to things that could come in and out of a warehouse or out of a factory or out of your home, out of a laundromat. I mean, that's taking the statute well beyond what But things can come in and out. I don't want to belabor it, but we take windows in and out. And I think most of us would think that the windows are part. You replace your windows. Sometimes windows are reused. The fact that they can come in and out doesn't seem to be the question, right? Well, and this goes back to a little bit of the history, the sort of torture history of this statute. It was originally drafted. It refers to contractors, engineers, designers, and then Broom, Supreme Court. It's an old case. Justice Ness was on there. It's an old case. But it says that violates equal protection. You've got to extend it to manufacturers of construction components. Windows, doors, flooring. So then the legislature comes back, amends the statute to include owners and manufacturers of components. And I think this is what council is referring to when it's referring to Broom. So they add in those specific individuals. And so the history shows they're talking about construction and components that are incorporated in as part of construction of a building. And that's what the Supreme Court of Toronto repeatedly refers to in Columbia, Snavely, Broom. They're talking about construction. That's why the statute, the plain language refers to occupancy, substantial completion. It talks about the condition of the premises. When you're looking at a piece of equipment, and this is the argument here where the district court went too far, you're looking at a piece of equipment. It's movable. We contend the record is clear that it comes in on a truck and replaces a previous piece of equipment. Twenty years later it's totally overhauled, moved, shifted. This is not what is contemplated by the statute. And I think that's where movable becomes very important. And it goes to your point about the Supreme Court's reference to the Dunham decision. The Dunham decision says, talks about things that cannot be removed or carried away from the premises. I don't want to belabor that. Can I have just a minute? So the challenge is there's no evidence. Trade fixtures are limited to tenants. It's not included if it's their own property. And there's no record evidence here. Nobody's argued that it's a trade fixture. One. Two, there's no record evidence that CSI was a tenant as opposed to owning its own building. And so even if that sort of exception probably doesn't survive the rest of the case, but even if it did, it doesn't seem to apply here because we don't have any evidence that they were a tenant and that these were trade fixtures. That's correct. What I think the Supreme Court is doing is making an assumption that it could be sold off and it could be replaced easily. Clearly, this machine didn't have a long and useful permanent life. And that's what the South Carolina Pie Bond Lone Star case is talking about. I see I'm out of time. I can address the questions with regard to certification. Otherwise, we rest on our briefs. Thank you. Thank you, Your Honor.
judges: Pamela A. Harris, Julius N. Richardson, Allison J. Rushing